ORIGINAL

# In the United States Court of Federal Claims

No. 16-545C (Pro Se)

(Filed: January 11, 2017 | Not for Publication)

|  |  |
|---|---|
| RICHARD RALPH MALCOLM, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

Keywords: Pro Se Complaint;
Military Pay Act; Disability
Retirement Pay; Statute of
Limitations; 28 U.S.C. § 2501.

**FILED**

**JAN 1 1 2017**

U.S. COURT OF
FEDERAL CLAIMS

*Richard Ralph Malcolm*, Miami, FL, Plaintiff *pro se*.

*Joshua A. Mandlebaum*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General. *Steven Gonzales*, Office of the Judge Advocate General, General Litigation Division, Washington, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

The pro se plaintiff, Richard Ralph Malcolm, has filed a complaint seeking the correction of his naval records to reflect an "honorable" discharge; a concomitant award of back pay; and, relatedly, an award of disability retirement pay. As discussed below, the Court lacks jurisdiction over Mr. Malcolm's claim for back pay because he filed his complaint after the six-year statute of limitations set forth in 28 U.S.C. § 2501 had run. Further, his claim for disability retirement pay is not ripe because Mr. Malcolm has not presented it to an appropriate military board in the first instance. The Court also lacks jurisdiction to correct Mr. Malcolm's records in the absence of a viable claim for monetary relief. Accordingly, Mr. Malcolm's complaint must be **DISMISSED**.[1]

---

[1] Along with his complaint, Mr. Malcolm filed a motion for leave to proceed in forma pauperis. Docket. No. 2. The Court **GRANTS** that motion solely for the purpose of deciding the government's motion to dismiss.

# BACKGROUND[2]

## I.     Mr. Malcolm's Naval Service and Discharge

Mr. Malcolm enlisted in the Navy on February 1, 2002. Admin. R. (AR) 107, Docket No. 13. Mr. Malcolm alleges that during basic training he "realized that his mental faculties were being diminished with each passing day." Am. Compl. at 7, Docket No. 8. According to Mr. Malcolm, he "told his unit leader that he should get an entry level separation because of his inability to focus and perform basic tasks." Id.

After completing basic training, on August 18, 2002, Mr. Malcolm reported to duty aboard the USS Abraham Lincoln. AR 145. Once aboard, he allegedly began to experience "extremely painful headaches" after some compact discs and computer programs were stolen from him. Id. at 32. He further claims that he "realized that [he] was developing a mental condition due to the compressed environment," and that he "sought treatment for [the] condition that [he] knew was developing." Id. at 35.

Mr. Malcolm began making regular visits to the ship's medical personnel. See id. at 69–72, 277–80. He primarily complained of headaches, which he claimed had never previously been a problem for him. See id. at 278–80 (complaints of dizziness, lightheadedness and confusion during September 13, 2002 visit to ship's psychologist); id. at 72 (complaints of "intense headaches since coming on the boat" during September 16, 2002 medical visit); id. at 71 (complaints of "headaches" and a "spaced out feeling" during September 18, 2002 visit with ship's psychologist); id. at 271 (complaints of headaches and severe stress during September 23, 2002 visit); id. at 269 (same during September 25, 2002 medical visit); id. at 259 (same during October 22, 2002 medical visit); id. at 251 (November 9, 2002 examination due to headaches); id. at 78 (November 11, 2002 examination due to headaches); id. at 68 (November 12, 2002 examination due to "recurrent" headaches).[3]

Mr. Malcolm also informed medical personnel that he believed he was developing a "mental condition" while aboard the ship. Id. at 35; see also id. at 1 (statement by Mr. Malcolm indicating that he "complained on numerous occasions that [he] was experiencing a mental state that [he] was unfamiliar with," that his "mind had deteriorated," and that he "knew it even if no one else did"). He claims that he "sought treatment for a condition that [he] knew was developing." Id. at 35.

During his service aboard the USS Abraham Lincoln, Mr. Malcolm was twice subject to disciplinary action. First, on October 28, 2002, Mr. Malcolm was disciplined

---

[2] The facts set forth below are based on the assertions in Mr. Malcolm's amended complaint, as well as jurisdictional facts drawn from the government's motion to dismiss and the administrative record filed by the government.

[3] During several of his medical visits, Mr. Malcolm apparently expressed a desire to leave the Navy. See, e.g., AR 259, 267, 271.

for demonstrating insubordinate conduct, failing to obey orders or regulations, and making provocative speech or gestures. Id. at 176. As a result, he received a reduction in rank, a 45-day restriction, and two months of half-pay status. See id. at 176–78.

Second, on November 19, 2002, Mr. Malcolm was disciplined for failing to timely report to his place of duty on four occasions and for violating Navy policy on sexual harassment. Id. at 179–81. As a result, Mr. Malcolm was punished with a three-day stay in the brig on a diet of bread and water. Id. at 181.

On November 23, 2002, Mr. Malcolm received a negative performance evaluation. Id. at 149–50. According to the evaluation, Mr. Malcolm:

> [D]emonstrate[ed] a complete lack of suitability for military service. He require[ed] constant supervision and . . . bec[a]me a source of distraction to other Sailors within this command. [Mr. Malcolm] demonstrate[ed] no desire to become a contributing member to the Naval service. [Mr. Malcolm] display[ed] none of the core values expected of Sailors, and in his short time on board . . . dest[r]oyed all credibility and trustworthiness. No integrity or work ethic.

Id. at 150. The evaluators recommended that Mr. Malcolm not be retained in the Navy. Id.

Following this evaluation, the Navy commenced proceedings to separate Mr. Malcolm from the service. Id. at 172–73. He was then discharged from active duty on December 5, 2002. Id. at 112. His discharge documents stated that he was separated "under other than honorable conditions" based on "misconduct." Id.

## II.     Mr. Malcolm's 2013 Diagnosis and the Subsequent Administrative Proceedings

On April 9, 2013, Dr. Addys Prieto, a psychologist, diagnosed Mr. Malcolm with bipolar I disorder. Id. at 200. At that time, Mr. Malcolm reported a history of mood swings, beginning during his late adolescence. Id. On November 25, 2013, Dr. Safir Azam, a psychiatrist, diagnosed Mr. Malcolm as having a history of bipolar I disorder, rapid cycling. Id. at 79. Dr. Azam wrote that Mr. Malcolm's history "indicate[d] long standing symptoms of mania and [that] he [was] vulnerable to stressors." Id.

On May 14, 2013, shortly after receiving his diagnosis from Dr. Prieto, Mr. Malcolm filed a request before the Naval Discharge Review Board (NDRB) to have the character of his discharge upgraded from "other than honorable" to "honorable." Id. at 197. He contended that he "did not violate any rules or procedures" during his service, but rather that "due to [his] bipolar disorder . . . [he] was render[]ed incapa[c]itated and [his] actions were compulsive rather than deliberate." Id. at 197–98.

The NDRB denied Mr. Malcolm's request on January 27, 2014. Id. at 190. It first determined that contrary to Mr. Malcolm's assertions, he had, in fact, violated Navy rules

and procedures during his service. Id. at 194. The NDRB noted that "[w]hen reviewing a discharge, the NDRB does consider the extent to which a medical problem might affect an Applicant's performance and ability to conform to the military's standards of conduct and discipline." Id. It concluded, however, that there was "no evidence in [Mr. Malcolm's] record that he was treated for a mental health condition while on active service or that he had a history of mental health issues that existed prior to his enlistment." Id.

Further, the NDRB found that that Mr. Malcolm's April 2013 bipolar diagnosis was "too far removed in time from his active service to be relevant to his mental health during his enlistment in 2002." Id. Accordingly, the NDRB concluded that "[t]here [was] nothing in the records, and [Mr. Malcolm] did not provide any documentation, to show that he was not responsible for his actions or should not be held accountable for his misconduct." Id.

After receiving the NDRB's decision, on March 31, 2014, Mr. Malcolm filed a request before the Board for Correction of Naval Records (BCNR) to have his disciplinary record expunged and his discharge "upgraded to honorable." Id. at 31. He claimed that, contrary to his records, he had "complied with all the rules and regulations as prescribed in the Navy code of conduct"; that "[a]t no time during [his] service did [he] disobey any lawful order"; and that he "performed [his] duties to the best of [his] ability in an environment in which [his] mental health was compromised." Id. at 34–35.

The BCNR denied Mr. Malcolm's request on July 10, 2015.[4] Id. at 26. In making its determination, the BCNR "weighed all potentially mitigating factors," including Mr. Malcolm's "assertion that [he] was denied treatment for bipolar I condition." Id. at 27. The BCNR concluded, however, that "these factors were not sufficient to warrant [the] recharacterization of [Mr. Malcolm's] discharge given the seriousness of [his] misconduct." Id. Further, the BCNR noted that "there [was] no evidence in the record . . . that [Mr. Malcolm] [was] diagnosed with, or denied treatment for, bipolar I condition while in the service." Id.

## III.   This Action

Mr. Malcolm filed his complaint in this Court on May 4, 2016. Docket No. 1. He then filed an amended complaint on June 16, 2016. Docket No. 8. In his amended complaint, Mr. Malcolm alleges that his discharge was wrongful because the Navy "willful[ly] and deliberate[ly]" denied him access to medical care "even though [he had been] complaining of psychotic thoughts since the second week of bootcamp." Am. Compl. ¶ 1(a). Further, he alleges that he was "discharged . . . in violation of [his] due process rights" and was wrongfully denied access to counsel. Id. Mr. Malcolm also alleges that he "first developed his disabling condition due to his military service and due

---

[4] Although Mr. Malcolm's application to the BCNR "was not filed in a timely manner," the Board "found it in the interests of justice to waive the statute of limitations and consider [his] application on the merits." See AR 26.

to the lack of care is currently disabled because of it." Id. ¶ 1(c). As relief, Mr. Malcolm requests that the Court "issue an order that corrects his naval discharge." Id. ¶ 1. He further demands "monetary compensation for $1,000,000 . . . for legal employment compensation, medical retirement pay, disability benefits[,] and any and all other legal[l]y mandated compensation." Id. ¶ 1(d).

On September 6, 2016, the government moved to dismiss the case for lack of subject matter jurisdiction under Rule of the Court of Federal Claims (RCFC) 12(b)(1). Docket No. 9. Mr. Malcolm filed a response and a cross-motion for summary judgment on September 16, 2016. Docket No. 11. The government filed an administrative record containing Mr. Malcolm's service records on September 23, 2016, Docket No. 13, and then filed a reply in support of its motion to dismiss on September 30, 2016, Docket No. 14. On October 7, 2016, the Court suspended briefing on Mr. Malcolm's cross-motion for summary judgment pending its ruling on the government's motion to dismiss. Docket No. 15. By the Court's leave, on October 26, 2016, Mr. Malcolm filed a sur-reply to the government's motion to dismiss. Docket No. 17.

## DISCUSSION

### I.     Standard for Deciding a Motion to Dismiss Under RCFC 12(b)(1)

In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). Further, it is well established that complaints filed by pro se plaintiffs (like this one) are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004), aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

### II.    The Court of Federal Claims' Jurisdiction in Cases Involving the Correction of Military Records

The Court of Federal Claims is a court of "limited jurisdiction." E.g., Marcum LLP v. United States, 753 F.3d 1380, 1382 (Fed. Cir. 2014). The court's primary grant of jurisdiction is found in the Tucker Act, which gives the court jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Further, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." Id. § 1491(a)(2).

As the Supreme Court has observed, the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages. United States v. Mitchell, 463 U.S. 206, 212 (1983). It does not, however, confer any substantive rights on a plaintiff. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, to invoke the court's Tucker Act jurisdiction, a plaintiff must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008); see also Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1076 (Fed. Cir. 1994).

A statute may serve as an independent source of a substantive right to money damages where it "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" Roberts v. United States, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003)). In that regard, "[i]t is enough 'that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages.'" Id. (quoting White Mountain Apache Tribe, 537 U.S. at 473).

It is well-established that the Military Pay Act, 37 U.S.C. § 204, grants "an enlisted serviceman who has been improperly discharged [the] entitle[ment] to recover pay and allowances . . . to the date on which his term of enlistment would otherwise have expired had he not been so discharged." Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1208 (Fed. Cir. 1993); see also Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). Similarly, it is well-established that qualifying former service members are entitled to disability pay following a medical retirement under 10 U.S.C. § 1201. See Fisher v. United States, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing Sawyer v. United States, 930 F.2d 1577, 1580 (Fed. Cir. 1991) (observing that the Secretary of Defense "has no discretion whether to pay out retirement funds once a disability is found qualifying")); see also Brown v. United States, 396 F.2d 989, 990–91 (Ct. Cl. 1968); Grooms v. United States, 113 Fed. Cl. 651, 659 (2013). Thus, the court's jurisdictional grant extends to claims brought by former members of the armed services seeking corrections to their military records that, if successful, will entitle them to back pay and/or disability retirement pay.

The court's exercise of that jurisdiction is subject, however, to certain prerequisites. First, claims under 37 U.S.C. § 204 and 10 U.S.C. § 1201 are both subject to the general statute of limitations applicable to claims against the United States under the Tucker Act, which states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)). In a military discharge case, this court and the Court of Appeals have long held that the plaintiff's cause of action for back pay accrues at the time

of the plaintiff's discharge. See id. at 1304 ("If the plaintiff does not file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge.").

Second, because "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability," Friedman v. United States, 310 F.2d 381, 389 (Ct. Cl. 1962), the court ordinarily "has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance," Chambers v. United States, 417 F.3d 1218, 1225 (Fed. Cir. 2005). In other words, in most cases, "a military board must determine eligibility for disability retirement before such a claim accrues."[5] Id. at 1226.

## III.   Application to Mr. Malcolm's Claims

### A.   Claim for Wrongful Discharge

The Court concludes that it lacks jurisdiction over Mr. Malcolm's claim for wrongful discharge under the Military Pay Act. As noted above, a claim under the Military Pay Act based on a wrongful discharge must be raised within six years of the date the claim accrues. Ordinarily, as noted above, such claims accrue on the date of discharge. See Martinez, 333 F.3d at 1303–04. In limited circumstances, accrual may be suspended "until the claimant knew or should have known that the claim existed." Id. at 1319. This "accrual suspension" rule, however, is "strictly and narrowly applied: . . . [The plaintiff] must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or . . . must show that [the] injury was inherently unknowable at the accrual date." Id. (first alteration in original) (quoting Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). Further, it is knowledge of the relevant facts, not of their legal consequences, which determines the accrual date. See Young v. United States, 529 F.3d 1380, 1385 (Fed. Cir. 2008) ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date.").

Here, Mr. Malcolm was not actively misled by the Navy about his condition; nor was his condition "inherently unknowable." In fact, Mr. Malcolm claims that he knew of his impaired mental condition and its effects on his behavior at the time of his discharge. See AR 35 (alleging that Mr. Malcolm "realized that [he] was developing a mental condition" for which he "sought treatment"); id. at 1 (informing the BCNR that he had "complained on numerous occasions that [he] was experiencing a mental state that [he] was unfamiliar with" and that "he knew it even if no one else did"). Further, to the extent that the circumstances of Mr. Malcolm's discharge "violat[ed] [his] due process rights"; were tainted by "lack of counsel"; or were the result of a "willful and deliberate lack of

---

[5] The Court notes that such a claim may accrue in the absence of a board determination if, at the time of discharge, the service member "knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." Chambers, 417 F.3d at 1226; see also Real v. United States, 906 F.2d 1557, 1563 (Fed. Cir. 1990).

medical care," see Am. Compl. ¶ 1(a), Mr. Malcolm was aware of the underlying facts supporting these claims at the time of his discharge as well.

Because there exist no grounds for suspending the accrual date of Mr. Malcolm's wrongful discharge claim, that claim accrued on the date of his discharge, December 2, 2002.[6] The six-year statute of limitations thus expired on December 2, 2008, several years before Mr. Malcolm filed his complaint. Accordingly, the Court lacks jurisdiction over Mr. Malcolm's claim under the Military Pay Act.

**B.    Claim for Disability Retirement Pay**

The Court also lacks jurisdiction over Mr. Malcolm's claim that he is entitled to disability retirement pay. As noted above, in general, the Court has no jurisdiction over such a claim "until a military board [has] evaluate[d] a service member's entitlement to [disability] retirement [pay] in the first instance." Chambers, 417 F.3d at 1225; see also Jamison v. United States, 9 Cl. Ct. 297, 301–02 (1985) ("There being no correction board determination as to plaintiff's eligibility for disability retirement, the claim before this court is premature."), aff'd, 802 F.2d 469 (Fed. Cir. 1986).[7]

Mr. Malcolm did not present any claim for disability retirement benefits to the BCNR; rather, he requested only that the Board remove the disciplinary actions from his naval records and upgrade his discharge to "honorable." See AR 1, 32–36. The BCNR thus made no decision with respect to Mr. Malcolm's entitlement to disability retirement pay. Nor does it appear that a separation board made a determination upon his discharge. See Def.'s Mot. to Dismiss at 19. Accordingly, the Court lacks jurisdiction over Mr. Malcolm's claim for disability retirement pay.

---

[6] In his sur-reply, Mr. Malcolm argues that the accrual-suspension doctrine should apply because the Naval medical personnel "ignored" his complaints about mental difficulties and "misadvised" him about the "true nature of [his] mental being." See Pl.'s 2d Resp. and/or Mot. for Summ. J. at 10, Docket No. 17. Nothing in Mr. Malcolm's medical records, however, indicates that the Naval medical personnel were not responsive to his complaints, much less that they misled him regarding the existence of any underlying mental disorder. Thus, the "narrowly applied" accrual-suspension rule is not implicated here. See Martinez, 333 F.3d at 1319.

[7] That general rule applies here because the government does not argue—and the record before the Court does not establish—that Mr. Malcolm knew at the time of discharge "that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected" See Chambers, 417 F.3d at 1226. If the record did support such a finding, then Mr. Malcolm's claim for disability retirement would have accrued at the time of his discharge and—like his wrongful discharge claim—would be time-barred under 28 U.S.C. § 2501.

## CONCLUSION

For the reasons discussed above, the Court lacks jurisdiction over Mr. Malcolm's claim under the Military Pay Act because it is barred by the jurisdictional statute of limitations set forth in 28 U.S.C. § 2501. Further, his claim for disability retirement pay is not ripe because it has not been presented to an appropriate military board for review in the first instance. Finally, because the Court lacks jurisdiction over Mr. Malcolm's monetary claims, it also lacks jurisdiction to award Mr. Malcolm any non-monetary relief such as the correction of his naval records. See James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (observing that "the Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment" (quotation omitted)).

Mr. Malcolm's complaint is therefore **DISMISSED** without prejudice.[8] The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge

---

[8] Because of this dismissal, Mr. Malcolm's cross-motion for summary judgment is **DENIED** as moot.